# EXHIBIT 2



CJ-2022-2152
DisMW

## IN THE DISTRICT COURT OF OKLAHOMA COUNTY
## STATE OF OKLAHOMA

| | | |
|---|---|---|
| JOHN WOHLFORD, | ) | |
| Plaintiff(s), | ) | Case No.: Case No **CJ 2022 2152** |
| | ) | JUDGE: |
| v. | ) | |
| | ) | |
| AMERICAN AUTO SHIELD, LLC, | ) | |
| NRRM, LLC, d.b.a CAR SHIELD, | ) | FILED IN DISTRICT COURT |
| LLC, and AMERICAN BANKERS | ) | OKLAHOMA COUNTY |
| INSURANCE COMPANY OF | ) | |
| FLORIDA, | ) | MAY - 6 2022 |
| Defendant(s). | | |
| | | RICK WARREN |
| | | COURT CLERK |

**ORIGINAL PETITION**  38 _____

Plaintiff, John Wohlford, hereby alleges and states as follows as to the above-named Defendants.

## GENERAL ALLEGATIONS

1. American Auto Shield, LLC, ("AAS") is a foreign limited liability company doing business in the State of Oklahoma.

2. NRRM, LLC, d.b.a. CarShield, LLC, ("NRRM") is a foreign limited liability company doing business in the State of Oklahoma and within the United States; it claims to have devoted substantial resources building the CARSHIELD brand in the vehicle service contract market and displays the CarShiled marks on its website, print, radio, and television advertising (<u>NRRM, LLC v. Kingstar Holdings, LLC</u>, 4:17CV01665 PLC, 2017 WL 4889472, at *3 (E.D. Mo. Oct. 30, 2017)), unbeknownst to the plaintiff from the advertising materials.

3. Upon information and belief, AAS and NRRM sell and issue "Mechanical Breakdown Protection", also named/titled by AAS and NRRM by various other

Page 1 of 19

EXHIBIT 2

descriptions including extended warranty policies within the State of Oklahoma and have a business arrangement amongst the defendants similar to the agreement that existed between NRRM and Mepco Finance Corporation.

4. According to NRRM and ASS, as stated in the contract/policy with the plaintiff, their "obligations" are insured by American Bankers Insurance Company of Florida ("Bankers").

> 1. OUR obligations under this CONTRACT are insured by American Bankers Insurance Company of Florida, 11222 Quail Roost Drive, Miami, FL 33157. If

5. According to its website Bankers is a stock company that was incorporated in 1947-10-29 and has assets of $1,270,172,340.00, capital of $5,083,164, and net surplus of $444,781,269.

6. AAS and NRRM advertise and solicit Oklahoma citizens and residents to purchase "Mechanical Breakdown Protection" on television and on the Internet as well as in other media.

7. NRRM and AAS advertise and solicit Oklahoma citizens and residents to purchase what they designate in one form or another as a "Service Agreement" on television and on the internet as well as in other media.

8. NRRM advertises and solicits Oklahoma citizens and residents to purchase what it designates as "Mechanical Breakdown Protection" on television and on the Internet as well as in other media; the products are portrayed as an insurance product.

9. The matters sued upon herein occurred while Plaintiff's vehicle was being kept, driven, serviced, and maintained in Oklahoma.

10. Defendants have sufficient contacts with the State of Oklahoma to warrant the exercise of *in personam* jurisdiction by this Court over them. Pursuant to 12 O.S.

§2004(F), this Court has proper subject matter jurisdiction. Pursuant to 12 O.S. §137, venue is proper in Oklahoma County or Comanche County, Oklahoma.

11. In its advertising NRRM and AAS use the following terminology to describe the characteristics and benefits of what they descriptively call a Vehicle Service Contract:

 a. *claims*

 b. *premiums*

 c. *coverage*

 d. *deductible*

 e. *benefits*

 f. *protection*

 g. *peace of mind*

 h. *Declaration page*

 i. *Deductible*

 j. *Subrogation*

11. NRRM's internet website is intended to induce consumers to purchase the product by causing the consumer to fear expensive repairs (**Frequently Asked Questions** section in the website):

> Your car's engine, drive axle and transmission are covered in most CarShield contracts. These are the most expensive parts to repair. CarShield has them covered.

12. NRRM advertised and marketed the "CarShield-Mechanical Breakdown Protection" product using phrases such as, "CarShield pays for repairs so I don't have to", and "If your car breaks down, could you afford to pay thousands and thousands on a new engine or transmission? With CarShield you won't have to."

12. NRRM and AAS paid high-profile celebrities to advertise their products. These celebrities included "Ice-T" and "Chris Berman".



13. According to its advertisements NRRM and AAS provide mechanical breakdown coverage for more than one million vehicles, which would signify that their cash assets exceed $100 million.

14. In the "vehicle owner benefits" section of its internet website NRRM advertises Peace of Mind in the following way:

Nobody likes it when their car breaks down, but it's good knowing your CarShield vehicle service plan will be ready to help. The sooner you choose CarShield, the quicker you'll drive with absolute peace of mind."

15.     In the "vehicle owner benefits" section of its internet website NRRM advertises "12 ways CarShield simplifies your automotive life." Among the 12 ways listed are the following:

*Break downs are a nightmare but dealing with CarShield Administrators is a dream.*

*Your CarShield vehicle service contract can be as simple or as fancy as you like.*

*We pride ourselves in making our customers [sic] needs met. Whenever you need us, we will be here at your disposal.*

*A CarShield contract means one less thing to worry about.*

*File your claim online any time, we are here to help you when you need it.*

*People that we allow access to your car are professionals, not iffy amateurs.*

19.     NRRM's and AAS's intended audience for its commercials included Plaintiff; Defendants and/or their authorized representatives authorized and approved the content of their commercials.

20. NRRM and AAS intend for the statements and representations contained in their commercials to be relied on by their intended audience, including Plaintiff.

21. Plaintiff saw Defendants' media/television advertisements and relied on the content of the advertisements.

22. In its advertisements Defendants, do not explain that NRRM sells Mechanical Breakdown Protection but does not pay claims.

23. In its advertisements Defendants do not explain that AAS pays the claims, not NRRM, or that obligations that are owed under the service agreement are insured by Bankers; Defendants' television advertisements falsely represent the relationship between Defendants.

24. Based on Defendants' representations Plaintiff believed he could purchase from NRRM protection from expensive repair costs to his vehicle, as was advertised by NRRM and AAS.

25. Based on the words used by NRRM in advertisements and in the documentation provided to Plaintiff by NRRM he believed he bought insurance protection from NRRM against the high cost of repairing a covered mechanical breakdown for the 2004 BMW 545 that he purchased on or about 11/30/2020.

26. In the cover letter titled "Welcome to the CarShield family" sent to plaintiff after he paid NRRM, plaintiff was told the following:

Welcome family of vehicle owners that have the peace of mind and y of mecha breakdown protection.

27. NRRM and AAS also called the coverage agreement a "month-to month vehicle service contract"; plaintiff's contract was No. "MRF3648604 Series 001"; the vehicle service contract listed plaintiff as the purchaser, AAS as the "obligor" and

"Carshield" as the "salesperson (company)", with an effective date of 4/7/2021 for the 2004 BMW 545, VIN WBANB33544B113417, that plaintiff purchased on or about 11/30/2020.

28. Plaintiff was not required to personally sign the coverage application secured from AAS and NRRM, did not sign the contract, and did not knowingly or with complete information agree to arbitration.

29. Unbeknownst to the plaintiff the Better Business Bureau® advises consumers to use caution if considering doing business with CarShield; BBB found that NRRM and AAS was one of three companies that that had the most consumer complaints against NRRM and AAS, with numerous complaints by consumers as follows (listed on the BBB website):

> *Kimberly M*
> *1 star*
> *03/07/2022*
> *Horrible service. I would not recommend it to my enemy!!! I got my policy in November, had car problems in mid-February. It took the "inspector" 2 days to come to the repair shop and 2 additional days for the adjuster to deny my claim. I was out over $3000. Poor customer \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*, no professionalism, and rude agents. I politely canceled my contract with them and if I had have read the reviews before buying my contract, I would never have purchased it. They use false advertisements to lure people into buying a contract. If the actors they use in their advertisement knew how bad they were, I doubt they would still be a spokesperson for this company. When you call to ask for a supervisor, they say they can't get them and they won't give you their names. I do not understand why it took so long to be denied service. They really should take them off the air or market!! Worse company ever!!!!! I shouldn't even leave them a star, they deserve a half star for their lack of professionalism!!!*

> *Aziz J*
> *1 star*
> *03/07/2022*
> *Everything you see on TV for Carshield is a complete LIE!! I had the highest service that I could get for almost 6 months as and when my pick up truck broke down, they did not stand behind what I paid for. First, they said they*

*I had to pay for my own rental regarding that I paid for this service ahead of time, second they sent to multiple mechanic shops that don't accept their services because they never paid the shop for work they have done, they pretty much stiffed them, so all the mechanics around in that area don't want to do business with them. Third, if you end up getting your car to the mechanics that accept Carshield, they will have to send an adjuster to the shop and he will do anything in their power to make it look like that it's not in your policy and that you will have to pay for it out of pocket. Bottom line is, don't do business with this company, will end up throwing your money down the drain and end with high blood pressure. Very bad company to do business with, stay away from them.*

30.  Although NRRM and AAS promised the BBB that they would change their advertising practices to provide more clarity, NRRM and AAS have not done so to plaintiff's knowledge and according to the BBB the changes made to not address the BBB's concerns of misleading sales and advertising practices; the BBB reports there have been over 2,500 consumer complaints reported for a three-year period.

31.  NRRM and AAS have described the coverage by using various terms, including but not limited to, "mechanical breakdown protection", "plan", "CarShield Extended Warranty", and "month-to month vehicle service contract" and have also stated that the "amount specified on the DECLARATIONS PAGE" is the amount that will be paid for mechanical breakdown or failure.

32.  Despite NRRM and AAS claiming that they do not market or sell a warranty product (extended warranties), they allow and authorize third parties to market, advertise and misrepresent the characteristics, attributes, and benefits of its "Mechanical Breakdown Protection" coverage.

CarShield Warranty - Explore Our Coverage Options
**Ad**·https://www.carshield.com/

---

100% of Covered Repairs are Paid. Flexible Payment Plans. Serving Customers Over 15 Years
<u>Why Carshield</u> · <u>How It Works</u> · <u>Protection Plans</u> · <u>Free Quote</u>

**CarShield provides extended car warranties for new and used vehicles.** As an independent broker that operates nationwide, CarShield markets and sells vehicle service contracts and then works with another company (often American Auto Shield) for contract administration. Dec 26, 2021

**CarShield Reviews 2022 [Informative Plans + Coverage Charts]**

33. In the definition portion of the service agreement "contract" is defined as the "vehicle service contract COVERAGE that YOU have selected and purchased from the VENDOR, as listed on the DECLARATIONS PAGE of the CONTRACT".

34. The "Mechanical Breakdown Protection" provided coverage and/or insurance protection for Plaintiff in the event Plaintiff's vehicle, suffered a mechanical breakdown of the engine within the time and mileage parameters of the "Mechanical Breakdown Protection", which Plaintiff believed amounted to insurance coverage.

35. Plaintiff timely initiated a claim for the covered vehicle and complied with the requests made by AAS and NRRM for the vehicle to be taken to a qualified (ASE Certified) mechanic for diagnosis.

36. The vehicle was delivered to Jackie Cooper Imports, 14145 North Broadway Extension, Edmond, Oklahoma and a repair estimate of $3,276.63 was provided to AAS on about 10/25/21 as per the requirements of the contract/policy, however AAS refused to pay the covered repair costs.

37. The needed repairs were covered under the contract however after numerous unproductive communications with either NRRM or AAS representatives, Jacki

Cooper Import refused to engage further with NRRM or AAS for the needed repairs as the defendants failed to provide an "authorization code" so that the repairs could be made.

38. NRRM and AAS actions amount to a wrongful denial of plaintiff's claim, false advertising, and fraud.

39. Defendants were aware, or should have been aware, that every contract in Oklahoma contains an implied duty of good faith and fair dealing, which is a nondelegable duty, to which defendants owed the plaintiff as a result of the relationship between plaintiff and defendants.

40. Once the plaintiff presented the claim defendants had a duty to conduct an investigation reasonably appropriate under the circumstances so as to pay plaintiff's claim fairly and promptly.

41. Defendant knew that when a first party claimant, such as the plaintiff, submits a claim under the contract/policy the claimant is usually in strait financial circumstances and is therefore, particularly vulnerable to oppressive tactics on the part of an economically powerful entity such as the defendant.

42. Defendant knew or should have known that the vehicle service contract/policy created a special relationship between the defendant and the plaintiff.

43. Plaintiff is pleading all theories whether consistent or inconsistent based on Oklahoma law:

> "The Plaintiff may 'invoke and advance all affordable theories in a single trial.' Smedsrud v. Powell, 2002 OK 87, n.32, 61 P.3d 891, 897; see also 12 O.S. 2011 § 2008(e)(2) (allowing a litigant 'not only to plead inconsistently, but also be allowed to rely on inconsistent theories or defenses *throughout trial*' (emphasis added)). 'Not until all proof has been adduced may the trial court eliminate from submission theories unsupported by evidence.' Powell, 2002 OK 87, ¶ 18, 61 P.3d at 898. 'If there is proof to support multiple theories, all must be

submitted under proper instructions.' Id. While our law is clear that 'inconsistent judgments or *double recovery may not be permissible*, [a] party is not prevented from fully litigating *322 the inconsistent theories or defenses at trial.'" **Fox v. Mize, 2018 OK 75, ¶ 12, 428 P.3d 314, 321–22, *as corrected* (Oct. 2, 2018).**

## BREACH OF CONTRACT

Plaintiff realleges and restates all previous allegations and statements and further states and alleges:

44.     Plaintiff paid valuable consideration to NRRM and apparently AAS for performance of the benefits and services promised in "Mechanical Breakdown Protection" contract/policy.

45.     NRRM and AAS failed to honor the promises stated in the "Mechanical Breakdown Protection" contract/policy with Plaintiff by failing to pay him for repair costs incurred as a result of the engine breakdown, such actions constituting a breach of contract.

46.     As a result of Defendants' breach of contract, Plaintiff has been damaged.

## BAD FAITH

Plaintiff realleges and restates all previous allegations and statements and further states and alleges:

47.     The "Mechanical Breakdown Protection" contract/policy provides for the transfer of risk and meets all of the elements for a contract of insurance; "[t]he essential elements of an insurance contract are the same as for any other contract.  In order to create a contract of insurance, there must be a meeting of the minds of the contracting parties upon all the material terms and provisions of the contract." *Roads W., Inc. v.*

*Austin*, 2004 OK CIV APP 49, ¶ 15, 91 P.3d 81, 85; 36 O.S. §102 ("'Insurance' is a contract whereby one undertakes to indemnify another or to pay a specified amount upon determinable contingencies."); *Embry v. Innovative Aftermarket Sys. L.P.*, 2008 OK CIV APP 92, 198 P.3d 388; citing 1 Couch on Insurance, § 1:6 (3rd Ed.2007); *see also Epmeier v. U.S.*, 199 F.2d 508, 509-10 (7th Cir.1952) ("Insurance, of ancient origin, involves a contract whereby, for an adequate consideration, one party undertakes to indemnify another against loss from certain specified contingencies or perils. It is contractual security against possible anticipated loss. Risk is essential, and equally so, a shifting of its incidence from one to another."); *Commissioner of Int. Rev. v. W.H. Luquire Burial Ass'n. Co.*, 102 F.2d 89 (5th Cir., 1939) (Luquire's agreement to provide burial benefits for a consideration equated to an insurance contract to tax company as an insurance company); *McMullan v. Enterprise Financial Group*, 247 P.3d 1173 Okla. (2011); *Sparks v. Old Republic Home Prot. Co., Inc.*, 2020 OK 42, ¶ 33, 467 P.3d 680, 690, *cert. denied; Old Republic Home Prot. Co., Inc. v. Sparks*, 141 S. Ct. 895, 208 L. Ed. 2d 452 (2020).

48.     The function and purpose of the contract/policy at issue, despite any declarations to the contrary, meet all the elements of an insurance product, as it promises to indemnify plaintiff for covered losses.

49.     Plaintiff contracted for the peace of mind that the promised benefits would provide, consistent the defendants' advertisements which are designed to induce consumers into believing that by purchasing the "Mechanical Breakdown Protection" the risk of paying for repairs is transferred from the consumer to the Defendants, i.e., insuring the buyer of the contract for covered losses.

50. Defendants' relationship with Plaintiff was a fiduciary relationship and/or, a special relationship, making the laws governing fiduciary relationships applicable.

51. Plaintiff was never provided the insuring agreement between Bankers, AAS, and NRRM, however under information and belief plaintiff is a third-party beneficiary in the insuring agreement, entitling him to the benefits of the insuring agreement and the application of good faith and fair dealing pursuant to Oklahoma law.

52. Defendants knew, or should have known that when NRRM and AAS sold the advertised services and made contractual promises to the plaintiff that under the circumstances they engaged in activities and conduct such that they acted like an insurer creating a special relationship to exist between the defendants and the plaintiff, creating a duty of good faith and fair dealing as recognized in *Wathor,* 2004 OK 2, at ¶ 16, 87 P.3d at 563–564 and referenced in Badillo v. Mid Century Ins. Co., 2005 OK 48, ¶ 52, 121 P.3d 1080, 1101, as corrected (June 22, 2005).

53. The duty to act in good faith required defendants to abstain from taking unfair advantage of the plaintiff as set forth in 25 O.S.2001 § 9.

54. Defendants failed to conduct a reasonable and thorough evaluation as to plaintiff's claim, have treated plaintiff as an adversary, and have generally failed to treat the plaintiff in good faith causing economic and personal damages to plaintiff, including but not limited to loss of peace of mind and security, emotional distress, worry, and anguish.

55. Defendants have forced the plaintiff to file suit to obtain monies that plaintiff is entitled to which there is no reasonable justification for defendant's failure to pay

56. That the actions of the defendant were in bad faith, reckless and wanton justifying an award of punitive damages.

## VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT

Plaintiff realleges and restates all previous allegations and statements and further states and alleges:

57. AAS and NRRM are subject to the rules and regulations of the Oklahoma consumer Protection Act ("Act") as per the terms of the Act, since defendants are performing consumer transactions as defined by 15 O.S. §752.

58. The Act declares it unlawful for a business to make a false or misleading representation as to the source and/or benefits of the subject of a consumer transaction.

59. AAS and NRRM are required to truthfully advertise the nature and benefits of the product it sells, and the Act prevents AAS and NRRM from engaging in deceptive and unfair trade practices.

60. AAS and NRRM are required to truthfully and fully disclose the terms of the "Mechanical Breakdown Protection" contract in media and print advertising.

61. AAS and NRRM are required to satisfy, honor, and pay legitimate claims pursuant to the terms of the "Mechanical Breakdown Protection" contract.

62. "The commission of any act or practice declared to be a violation of the Consumer Protection Act shall render the violator liable to the aggrieved consumer for the payment of actual damages sustained by the customer and costs of litigation including reasonable attorney's fees, and the aggrieved consumer shall have a private

right of action for damages, including but not limited to, costs and attorney's fees." 15 O.S. § 761.1.

63. The provisions of the Oklahoma Service Warranty Act 15 O.S. § 141.1 et. seq., if applicable, do not limit Plaintiff's remedies under general civil law or common law.

64. The provisions of the Oklahoma Service Warranty Act 15 O.S. § 141.1 et. seq., are cumulative to the rights and remedies available under the general civil and common law.

65. The "Mechanical Breakdown Protection" sold to Plaintiff does not meet the statutory provisions of a Service Warranty as defined in the Oklahoma Service Warranty Act 15 O.S. § 141.1 et. seq.

66. The "Mechanical Breakdown Protection" sold to Plaintiff does not have any mileage limitation.

67. The "Mechanical Breakdown Protection" sold to Plaintiff remains in force as long as Plaintiff makes the monthly premium payments.

68. The "Mechanical Breakdown Protection" sold to Plaintiff has a Renewal Term which means each succeeding month for which premium payment is received.

69. The "Mechanical Breakdown Protection" sold to Plaintiff is intended to provide indemnification for covered repairs.

70. AAS and NRRM misled plaintiff when advertising and promising that the "Mechanical Breakdown Protection" sold to Plaintiff provided full protection against engine failure and that Plaintiff's only cost would be the deductible, when in fact Defendants knew that to be untrue, which amounts to a violation of the Act.

71. Defendants' actions in the advertising, marketing, and sales of the "Mechanical Breakdown Protection" sold to Plaintiff constitute violations of the Act's "Unlawful Practices" set forth under 15 O.S. § 753.

72. Defendants falsely informed Plaintiff the "Mechanical Breakdown Protection" provided full protection against engine failure and that Plaintiff's only cost would be the deductible, when in fact NRRM and the other Defendants knew that to be untrue, which amounts to a violation of the Act.

## FRAUD/MISREPRESENTATION/DECEIT

Plaintiff realleges and restates all previous allegations and statements and further states and alleges:

73. AAS and NRRM made material representations, as alleged herein, that were false, knowing that they were false or made recklessly with disregard for the truth with the intention that plaintiff would rely on such representations, which plaintiff did.

74. NRRM concealed or failed to disclose the fact that AAS would be the entity that would be responsible for paying claims and that Bankers would insure AAS's and NRRM's failure to do so in its advertising which plaintiff relied on; Bankers never disclosed to plaintiff the policy benefits and coverage he was entitled to.

75. NRRM's advertisements created an untrue or misleading impression of the actual relationship that would exist between plaintiff and NRRM, as plaintiff understood that he was buying an insurance warranty policy from NRRM that would provide coverage for mechanical breakdowns he may experience in his covered vehicle, which was not the case at all.

76. NRRM and AAS had a duty to disclose to plaintiff, before he purchased the coverage, the material fact that AAS would be administering and paying claims and the defendants did not consider the product sold an insurance product.

77. Plaintiff was not advised that NNRM was simply acting as a salesperson or marketing agent for AAS and that AAS would be the "obligor", responsible for paying claims, that he would have to obtain authorization from AAS before services could be performed on his vehicle and the claim paid, or that repairs could not exceed $10,000.00, based on NRRM's advertising materials until the contract was sent to him after payment.

**Month-to Month Vehicle Service Contract**
**Declarations Page**
AMERICAN AUTO·SHIELD

Administered By:
American Auto Shield, LLC
1597 Cole Blvd Suite 200
Lakewood, CO 80401
Phone: 1-800-856-7884
Fax: 1-303-420-7543

CONTRACT #: MRF3648604 Series 001

**PURCHASER INFORMATION (YOU & YOUR)**
John Wohlford
4811 Se Tattershall Way
Lawton, OK 73501-6431
580-514-9199

**OBLIGOR**
American Auto ▓▓▓▓ LLC
1597 Cole Blvd Suite 200
Lakewood, CO 80401
720-376-6882 or 800-856-7884

**SALES PERSON (COMPANY)**
▓▓▓▓▓ELD
503 Pearl Drive
St. Peters, MO 63376
636-542-5798 or Toll Free: 800-587-4960
Seller ID # 500405D

**VEHICLE INFORMATION**
VIN: WBANB33544B113417
Year: 2004
Make: BMW
Model: 545

The aggregate limit of liability, for each one month CONTRACT TERM of all claims and benefits shall never exceed the NADA Average Retail Value, or other independently published guide if no NADA vehicle value is available, at the time immediately preceding the Breakdown or Failure or $10,000, whichever is greater.

1. **ADMINISTRATOR, SERVICE CONTRACT PROVIDER, OBLIGOR:** Means American Auto Shield, LLC, the party obligated under this CONTRACT.
American Auto Shield, LLC
1597 Cole Boulevard • Suite 200
Lakewood CO 80401-3418
Phone: 720-376-6882 or 800-856-7884   Fax: 303-420-7543

This is who YOU contact for any CONTRACT MECHANICAL BREAKDOWN OR FAILURE for covered repairs, cancellations and any other questions regarding YOUR CONTRACT. Important Notice: ADMINISTRATOR'S authorization for CONTRACT MECHANICAL BREAKDOWN OR FAILURE for covered repairs and additional benefits is always required prior to any service being performed. See Section F. for additional information and instructions.

78. Plaintiff's reliance on the false and misleading representations regarding the type of coverage he was purchasing and the extent of his out-of-pocket expenses for repairs that he would incur caused him damages.

## DAMAGES

Plaintiff realleges and restates all previous allegations and statements and further states and alleges:

79.    Plaintiff's mental distress is an element of damages in his bad faith cause of action and does not require plaintiff to show severe or outrageous conduct on part of the defendants.

80.    Because of the actions and non-actions of the defendant, plaintiff is entitled to the recovery of the repair and towing costs owed under the policy and other compensatory damages including punitive damages.

WHEREFORE, Plaintiff demands judgment against the Defendant in an amount that will exceed the amount required for diversity jurisdiction and all further relief that plaintiff may be entitled to in law and equity.

Respectfully submitted by:

/s/ Rick W. Bisher

Rick W. Bisher, OBA # 12215
Ryan, Bisher, Ryan & Simons
4323 NW 63rd St. Suite 110
Oklahoma City, OK 73116
(405) 528-4567
(405) 525-2123 Facsimile
rbisher@rbrlawfirm.com
ATTORNEY FOR PLAINTIFF

ATTORNEY LIEN CLAIMED AND
JURY TRIAL DEMANDED
DISCOVERY SERVED WITH PETITION